# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| | : Civil Action No.: |
| ENDLESS SUMMER PRODUCTIONS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : **COMPLAINT AND JURY DEMAND** |
| | : |
| SCOTT MIRKIN AND EVENT BY SCOTT | : |
| MIRKIN, INC., d/b/a ESM PRODUCTIONS, INC. | : |
| | : **15      6097** |
| Defendants, | : |
| | : |

Plaintiff, Endless Summer Productions, LLC, by and through their attorneys, Cooper Levenson, P.A., hereby allege and avers as follows:

## PARTIES

1.      Plaintiff, Endless Summer Productions, LLC, is a Delaware limited liability company with its principle office located at 34 Rankin Road, Newark, Delaware, 19711.

2.      Defendant, ESM Productions, Inc., is an incorporation with a principle business address at 2 Penn Center, 1500 J.F.K. Boulevard, Philadelphia, PA, 19102.

3.      Upon information and belief, Scott Mirkin, is an individual who, by all information, is a resident of Pennsylvania and has a business address of 2 Penn Center, 1500 J.F.K. Boulevard, Philadelphia, PA, 19102.

4.      On September 1, 2015, the parties entered into an Agreement entitled, Event Operations and Production Agreement ("Agreement").  A copy of the Agreement is attached hereto as **Exhibit A.**

## JURISDICTION – DIVERSITY OF CITIZENSHIP

5.    Pursuant to 28 U.S.C., §1332, jurisdiction is based on diversity of citizenship in the amount of plaintiff's individual claims and controversy exceeds $75,000.00.

6.    Plaintiff is a Delaware Limited Liability Corporation with its principle place of business in Delaware.

7.    Defendants are an individual and a corporation with its principle place of business of 2 Penn Center, 1500 J.F.K. Kennedy Boulevard, Philadelphia, PA 19102.

8.    As a result of defendants' breach of the Agreement, and breach thereof, plaintiff has sustained damages pursuant to the Agreement in the amount in excess of $117,000.00.

## FACTS COMMON TO ALL COUNTS

9.    At all relevant times hereto, plaintiff is an event operation and management production company specializes in exterior campgrounds and festival venues.

10.    The World Meeting of Families and others sponsored Pope Francis' visit to the City of Philadelphia.

11.    ESM Productions, Inc., was retained by the World Meeting of Families in order to promote the Pope's visit; including, but not limited to, World Meeting of Families Campgrounds scheduled to be opened on Thursday, September 24, 2015, and remain opened until Monday, September 28, 2015 (hereinafter "Campgrounds" and/or "Event").

12.    The plan was to create campgrounds in East Fairmount Park, known as the Francis Field Campground.

13.    Discussions regarding the campgrounds began on or about April, 2015 between defendants and plaintiff.

2

14.     These discussions sought to have campgrounds that remained opened 24 hours a day.

15.     Campgrounds sought amenities, including restrooms, showers, food, and beverage vendors, grills, charging station, and a general store.

16.     The fields were to be monitored by medical and security personnel; along with multi-lingual information teams.

17.     Next to park camping, tent only camping, and a limited number of RV's, with full power hook-up and plumbing services were to be made available .

18.     Based upon these discussions, requirements, representations and promises of defendants, plaintiff entered into the Agreement on September 1, 2015 and attached hereto and made a part hereof as **Exhibit A**.

19.     Defendants were responsible for promoting the Event, including the World Meeting of Family Campgrounds.

20.     Plaintiff was retained as an independent contractor to provide Operation Management and Production Management for the campgrounds.  This included selection and management of vendors to be engaged directly by defendants.

21.     Plaintiff was also to assist defendants' senior personnel in obtaining the necessary approval and permits.

22.     Plaintiff was to assist the defendants' senior personnel in securing the site and venue for the Event and related productions.

23.     Plaintiff was required to attend meetings, site surveys and conference calls upon the promoter's request.

24.     Plaintiff was to act as a signatory for the defendants solely in the connection with cost and expense pertaining to the Event that did not exceed $25,000.00.

25.     In consideration for plaintiff's work, defendants agreed to pay plaintiff and to engage vendors in connection with the Event.

26.     Defendants' were to facilitate communication between directors and other senior personnel with whom plaintiff must interact in connection with plaintiff's delivery of services, inclusive of emergency service director, revenue manager, food & beverage director and the equivalent.

27.     Defendants agreed not to interfere with plaintiff's performance of its duties under this Agreement; specifically, for plaintiff to provide its services.

28.     Defendants agreed to be solely responsible for securing all necessary permits, licensing, leases, agreements, and other authorizations from the authority, government and/or private as necessary to conduct the Event.

29.     The defendants were responsible for promoting the Event.

30.     Plaintiff's compensation, in accordance with the Agreement, was set forth in strict schedules. Specifically, the parties agreed to payments for production fees as follows:

(a)     Fifty percent (50%) of the Production Fee within seven (7) days of the mutual execution and exchange of this Agreement;

(b)     An additional twenty-five present (25%) of the Production Fee no later Than September 15, 2015;

(c)     The final twenty-five present (25%) of the Production Fee no later than ten 10) days after the final day scheduled for the close of public attendance of the Event; and

(d)     Payment or Reimbursement for all Event Staffing Fees and Event Expenses (as defined below) paid, advanced, or incurred by ESP (which ESP shall have no obligation to pay, advance or incur) shall also be due as

4

provided in Sections 5 and 6 below and in no event later than the date that final payment of the Production Fee is due, as set forth herein above.

31.     Plaintiff's compensation was also to have received event staffing fees with the following schedule:

(a)     Twenty-Five percent (25%) of the estimated total Event Staffing Fees (the "Staffing Fee Advance") within seven (7) days of the mutual execution and exchange of this Agreement; and

(b)     Fifty Percent (50%) of the estimated total Event Staffing Fees (the "Staffing Fee Advance") on September 15th, 2015; and

(c)     Promptly for the remaining balance of the Event Staffing Fees. ESP shall invoice Promoter for all Event Staffing Fees in excess of the Staffing Fee Advance, up to the total set forth above. ESP will invoice Promoter for the balance of staffing fees incurred. Promoter shall be solely responsible for the prompt payment or prompt reimbursement of all Event Staffing Fees.

32.     Plaintiff was also to receive reimbursement for expenses inclusive of travel, lodging, meals and per diem.

33.     Should the Event have taken place, plaintiff was also entitled to a sponsorship revenue and other cost sharing.

34.     Defendants agreed to make every effort to promote the Event and encourage other entities associated with the World Meeting of Families to do the same.

35.     Despite defendant's best efforts, if the circumstances are not as planned, defendants reserved the right to terminate the Event and the Agreement up to and through September 14, 2015.

36.     Specifically, Paragraph 11 of the Agreement states as follows:

Termination:  It is the expectation of the Promoter that the event will be successful and attain a considerable number of advance reservations. Promoter will make every effort to promote the Event and encourage other entities associated with the World Meeting of Families to do the same. However, circumstances beyond the Promoter and ESP's control may inhibit the success of the event. Therefore, Promoter reserves the

right to terminate this Event and this Agreement at any point up to and through September 14, 2015. Promoter and ESP will meet on September 14th to assess the Event to verify that Event planning and advance sales are meeting expectations. Promoter will consult with ESP prior to any decision to terminate however any decision to terminate this Event and this Agreement will be at the sole discretion of Promoter. In the event of termination up to and through September 14th, ESP will be entitled to payment of a portion of the Production Fee as specified in Section 4(a) and reimbursement of a portion of any Staffing Fee as specified in Section 5(a).

37.    In reliance upon the representation and promises of the defendants, and in order to provide appropriate Event planning services, plaintiff began organizing vendors, establishing site plans, obtaining the necessary information for licensing, obtain and secure staffing, obtain budgeting, establish operations, promotions and advertisements for the Event, and all other such activities in good faith for strict adherence to the Agreement.

38.    On September 8, 2015, plaintiff was entitled to compensation pursuant to Paragraph 4A in the amount of 50% of its production fee, or $40,000.00.

39.    Additionally, on September 8, 2015, plaintiff was entitled to compensation, pursuant to Paragraph 5A, in the amount of 25% of the staffing fee advanced, or $51,875.00.

40.    Additionally, other fees and costs have been expended by plaintiff inclusive of Event Expenses pursuant to Paragraph 6 in the preparation production of this matter. These amounts include advertising, web site, legal fees, mapping and travel reimbursements. See **Exhibit B**, payment request from Endless Summer Production.

41.    Despite repeated attempts to collect on those amounts, defendants have ignored any and all requests.

42.    On September 10, 2015, defendants terminated the Agreement pursuant to the Termination Clause in Paragraph 11.

43.     Upon termination, plaintiff is entitled to a portion of the annexed scheduled production fee and reimbursement of the next scheduled staffing fee pursuant to Paragraphs 4 & 5.

44.     Despite repeated attempts to have the amounts reimbursed and paid, defendants have not done so.

45.     Plaintiff has expended funds and performed in accordance with the Agreement.

46.     Plaintiff reasonably relied upon defendants' false statements, representations, warranties and guarantees to their detriment.

47.     Plaintiff reasonably relied that defendants would properly promote the Event.

48.     Plaintiff reasonably relied that, upon execution of the Vendors Agreement and Fees, as well as making the staffing requirements, that the Event would take place.

49.     As a result, plaintiff has incurred direct and future monetary losses; as well as incidental monetary expenses and damages, inclusive of attorneys' fees, interest and cost.

## COUNT I – BREACH OF CONTRACT

50.     Plaintiff repeats the allegations of the previous Paragraphs, 1-49, as though same were set forth at length herein.

51.     Plaintiff entered in to oral and/or written agreements with defendants for certain actions and/or activities to be performed related to the Event.

52.     The Agreement entered into between plaintiff and defendants is valid and an enforceable Agreement.

53.     Plaintiff took certain actions to perform their duties and responsibilities pursuant to the subject Agreement.

54.     The subject Agreement required defendants to provide certain amount of notice should the Event be cancelled; however, scheduled payments were to be advanced.

55.     Specifically, Paragraph 4a of the Agreement required within seven (7) days of the execution of this Agreement, 50% of the production fee ($40,000.00) and, Paragraph 5a, 25% of the staffing fee ($51,875.00), to be paid in consideration of the advanced work needed for the Event. See **Exhibit A**.

56.     The Agreement also required reimbursement of certain Event expenses.   See Paragraph 6 of **Exhibit A**.

57.     Finally, certain items required advance promotion and contract from vendors, specifically for this Event, and as contemplated, these  costs were reimbursable pursuant to Paragraph 1J of **Exhibit A**.

58.     Defendants  terminated  the  Agreement  pursuant  to  Paragraph  11,  on September 10, 2015, clearly beyond the first tiered scheduling payments as required pursuant to the Agreement and contemplated by all parties.

59.     Defendants breached the subject Agreement by failing to make the payment pursuant to Paragraphs 4a, 5a, 6 & 1J.

60.     Compensatory damages, consequential damages, interest, attorneys' fees and costs were foreseeable result of defendants' breach.

61.     Defendants also breached the Agreement when it failed to perform pursuant to the Agreement.

62.     Defendants breached the Agreement when it failed to and/or delayed in the selection and engagement of certain vendors.

63.     Defendants breached the Agreement when they unreasonably interfered with plaintiff's performance of its duties under this Agreement by failing to properly promote the Event.

64.     Defendants breached the Agreement when it failed to provide full payment to all vendors and other third-party costs and expenses for the Event.

65.     Defendants breached the Agreement when they engaged the services for the campgrounds but failed to take any other reasonable steps to secure the campground's success and/or involvement at the Event.

66.     Compensatory damages, consequential damages, interest, attorneys' fees and costs were each foreseeable result of defendants' breaches.

67.     As a direct and proximate result of defendants' failure to adhere to the Agreement, plaintiff has been damaged with direct and future monetary losses, incidental, consequential and compensatory damages, as well as attorneys' fees, interest and cost.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT II – QUANTUM MERUIT

68.     Plaintiff repeats the allegations of the previous Paragraphs, 1-67, as though same were set forth at length herein.

69.     Plaintiff provided valuable Event Coordination Services to defendants, worth not less than $117,000.00, exclusive of interest thereon.

70.     Plaintiff incurred expenses in the course of providing these valuable Event Coordination Services to defendants.

71.     Defendants accepted and benefited from these valuable Event Coordination Services provided by the plaintiff, in many ways, including but not limited to, having the ability to promote campground services, both for this Event and other future events.

72.     Plaintiff notified defendants that it expected to be paid for such valuable Event Coordination Services, both orally and as provided for in the Agreement between the parties.

73.     Defendants did not pay plaintiff for these valuable Event Coordination Services rendered by plaintiff.

74.     Defendants have received the benefit of these services provided by plaintiff.

75.     Plaintiff is  entitled to the Quantum Meruit value of the materials and services provided.

76.     The Quantum Meruit value of the services and materials provided by plaintiff to defendants for this Event for which defendants have failed and/or refused to compensate plaintiff is in excess of $117,000.00 plus interest.

77.     As a result, defendants have been unjustly enriched by receipt and enjoyment of the valuable Event Coordination Services without payment, and for which payment was expected and requested, the value of such enrichment is equal to the unpaid Event Coordination Services provided to defendants as set forth herein.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION

78.     Plaintiff repeats the allegations of the previous Paragraphs, 1-77, as though same were set forth at length herein.

79.     Defendants have a duty to provide truthful, timely and accurate information to plaintiff with its decision to permit Campgrounds to proceed as planned and as set forth in the subject Agreement.

80.     As set forth above, defendants represented to plaintiff, in substance, that would provide plaintiff with proper, accurate and timely notice of the cancellation of the Event only upon notice of circumstances beyond the defendants' control.   However, pursuant to the Agreement, defendants would make every effort to promote the Event and encourage other entities associated with the World Meeting of Families to do the same.

81.     Defendants represented to plaintiff that they would promote the Event properly.

82.     Defendants represented to plaintiff that they would provide notice of the Event's cancellation in a timely manner.

83.     Such representations were false and/or inaccurate, causing damage to plaintiff.

84.     Defendants negligence made such representations to plaintiff by various means of communications.

85.     The subject misrepresentations are materially false which, with the exercise of due care, defendants knew or should have known were materially false.

86.     Defendants omitted material facts pertaining to the cancellation of the Event and/or to the defendants' contractual obligations.

87.     Defendants omitted material facts were materially misleading.

88.     Plaintiff   was   reasonably   a   foreseeable   recipient   of   the   statements, misrepresentations and/or omissions made by the defendants.

89.     Plaintiff reasonably relied upon the statements, misrepresentations, and/or omissions of the defendants to the detriment of plaintiff.

11

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT IV – FRAUD IN THE INDUCEMENT

90.     Plaintiff repeats the allegations of the previous Paragraphs, 1-89, as though same were set forth at length herein.

91.     As set forth above, defendants stated that they would comply with the Agreement and perform in accordance with same.

92.     Furthermore, defendants knew that the Event required significant pre-event planning, promoting and staging.

93.     Failing to adhere to the course and scope of its contractual duties, defendants made certain representations, statements and/or omissions of its intentions and move forward with the Event, and profited by the terms of the Agreement regarding their late notice to plaintiff of cancellation of the Event and refusal to provide advance payments.

94.     In making said misrepresentations /omissions to plaintiff, defendants intentionally omitted certain facts and only made representations it knew were false and/or made them in reckless disregard for the truth.

95.     Said misrepresentations and omissions made by defendants were made with the purpose of inducing plaintiff to enter into the aforementioned Agreement for the Event.

96.     These misrepresentations and omissions were designed to induce plaintiff to enter into the Agreement.

97.     These misrepresentations and omissions were willfully and wantonly made, with knowledge of their falsehood, to induce Plaintiffs to enter into the Agreement and continue to perform under the Agreement.

98.     Plaintiff reasonably relied upon the misrepresentations and omissions.

99.     As a result of relying upon defendants' misrepresentations and omissions, plaintiff was caused to suffer monetary and future monetary damages.

100.     As a direct and proximate result of defendants' false and fraudulent misrepresentations and omissions, plaintiff suffered and will suffer financial loss.

101.     As a direct and proximate result of defendants false and fraudulent misrepresentations and omissions, plaintiff has been damaged.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT V – DETRIMENTAL RELIANCE

102.     Plaintiff repeats the allegations of the previous Paragraphs, 1-101, as though same were set forth at length herein.

103.     Defendants knew or should have known plaintiff would rely upon the representations and agreements made by the defendants in the subject Agreement.

104.     Plaintiff relied upon the representations and agreements of defendants in the subject Agreement.

105.    Plaintiff reasonably relied upon the defendants' representations and agreements in the subject Agreement.

106.    Plaintiff justifiably relied upon the representations and agreements of defendants in the subject Agreement.

107.    As a result of plaintiff's reliance on the representations and agreements made by defendants in the subject Agreement, plaintiff went to great lengths and expense retaining the appropriate services and staff for the Event.

108.    As a result and reliance of plaintiff on the representations and agreements of defendants in the subject Agreement, plaintiff has suffered compensatory damages in excess of $117,000.00.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

## COUNT VI – FRAUD

109.    Plaintiff repeats the allegations of the previous Paragraphs, 1-108, as though same were set forth at length herein.

110.    As set forth above, defendants stated that they would comply with the Agreement and perform in accordance with the Agreement.

111.    Further, defendants knew that the Event, in order to be completed, required a significant amount of planning, promotion and other activities.

112.    Defendants failed to meet the scheduled payments in the Agreement knowing that the Event would not proceed as planned.

113.    Defendants misrepresentations and omissions were designed to obtain from plaintiff the fruits of their efforts.

114.    These misrepresentations and omissions were willfully and wantonly made, with knowledge of their falsehood, to induce Plaintiffs to continue to perform under the Agreement.

115.    Plaintiff reasonably relied upon the representations and omissions.

116.    As a result of relying upon defendants' misrepresentations and omissions, plaintiffs expended significant time and money in order to have the Event proceed before its termination.

117.    As a direct and proximate result of defendants' fraudulent misrepresentations and omissions, plaintiff suffered financial loss and other damages.

WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, consequential damages, punitive damages, interest, attorneys' fees and costs, and any other relief the Court deems just and proper.

COOPER LEVENSON, P.A.

By: _____
　　　Carmelo T. Torraca, Esquire
　　　I.D. No.: 77553
　　　Attorneys for Plaintiff

DATED: November 5, 2015

JURY DEMAND

Plaintiff hereby requests trial by jury of all issues contained herein properly tried before a

Jury.

COOPER LEVENSON, P.A.

By: _____
           Carmelo T. Torraca, Esquire
           I.D. No.: 77553
           Attorneys for Plaintiff

DATED: November 5, 2015

CLAC 3222028.1

# EXHIBIT A

## EVENT OPERATIONS AND PRODUCTION AGREEMENT

This agreement ("Agreement") is entered into effective as of the 1st of September, 2015 by and between ESM Productions, Inc. ("Promoter"), whose business address is Two Penn Center 1500 John F. Kennedy Blvd., Philadelphia, PA 19102, and Endless Summer Productions, LLC, a Delaware limited liability company ("ESP"), with a principal office at 34 Rankin Rd. Newark, DE 19711.

### RECITALS

WHEREAS, Promoter is promoting an event, WMOF Campgrounds, scheduled to be conducted over and around the 18th through 30th of September 2015, in the Philadelphia, PA area ("Event");

WHEREAS, ESP is an event operations management and production company; and

WHEREAS, Promoter wishes to engage ESP to render services as more fully set forth below and attached in connection with the Event.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants and other good and valuable consideration set forth herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   Engagement. Promoter hereby engages ESP as an independent contractor to provide operations management and production management services ("ESP Services") in connection with Promoter's production of the Event.  ESP Services shall include the following (as applicable), unless otherwise agreed in writing by the parties:

      (a)    Managing all production and operational aspects of the Event for Promoter, including managing vendors engaged by Promoter and ESP to provide the Event's operations;

      (b)    Coordinating all production elements of the event site located at: East Fairmount Park 2140 N 33rd. St., Philadelphia, PA 19121 and coordinating services provided at the event site with local municipalities and organizations;

      (c)    Managing the Event's vendors for fencing, toilets, security and any other vendors customarily engaged by similarly situated event promoters and producers;

      (d)    Monitoring, coordinating and supervising the efforts of Promoter's senior staff, including (as applicable) such medical and emergency services personnel, revenue and accounting personnel, food and beverage coordinator personnel, all whether or not so named by Promoter, and any other personnel engaged by Promoter reasonably in connection with the operations of the Event;

(e)     Assisting Promoter's senior personnel in obtaining necessary approvals and permits;

(f)     Assisting Promoter's senior personnel in securing site and/or venue for Event-related production;

(g)     Managing and administering the Event's budget;

(h)     Attending meetings, site surveys and conference calls, upon Promoter's reasonable request;

(i)     Maintaining reasonable onsite management presence at all times from the inception of the load-in and set-up of the Event until the breakdown and clean-up of the Event; and

(j)     Acting as an authorized signatory for Promoter solely in connection with costs and expenses pertaining to the Event and less than $25,000;

(k)     Such other services as Promoter shall reasonably require and to which ESP shall agree to undertake, such agreement not to be unreasonably withheld.

By accepting the engagement for ESP Services, ESP has not made and does not offer any representation or assurance to Promoter of the commercial success, revenue generation or profitability of the Event. ESP and Promotor will make every effort to insure that the Event is a success. ESP and Promoter agree to review reservations and sales for the event on a daily basis to determine appropriate staffing levels and expenditures for the Event.

2.     ESP's Authority and Promoter's Obligations.

(a)     ESP, an authorized signatory of Promoter, shall choose the vendors that Promoter shall engage in connection with the Event, subject to Promoter's approval, not to be unreasonably withheld; and

(b)     Promoter shall facilitate communication between directors and other senior personnel with whom ESP must interact in connection with ESP's delivery of ESP Services (e.g., emergency services director, revenue manager, food and beverage director, artist relations, or the equivalent).

(c)     Neither Promoter nor any person or party associated with or under the control of Promoter will unreasonably interfere with ESP's performance of its duties under this Agreement or in any manner interfere or impede with ESP's ability to provide ESP Services.

(d)     Promoter shall be solely responsible for securing all necessary permits,

licenses, leases, agreements or other authorizations from any authority, government or private, necessary for the conduct of the Event.

(e)     Promoter shall be responsible for all other aspects of the Event other than ESP's Services.

(f)     Promoter shall be responsible for full payment of all vendors and all other third-party costs and expenses of the Event. ESP may terminate this Agreement upon ten (10) days written notice to Promoter in the event Promoter fails to timely pay vendors according to agreements between vendors and Promoter.

3.      Term. The term of this Agreement ("Term") shall commence upon the mutual execution and exchange of this Agreement and shall continue through the completion of the Event, including the reasonable time for break-down, load-out and clean-up after the close of the time period for public attendees of the Event.

4.      ESP's Compensation. In consideration for the ESP Services to be rendered by ESP in connection with this Agreement, Promoter hereby agrees: (a) to pay to ESP a production fee (the "Production Fee") in the amount of eighty thousand dollars ($80,000), (b) that ESP is entitled to any applicable Sponsorship Fee, as defined in Section 7, and a portion of the Net Event Revenue, as defined in Section 8, and (c) to pay or reimburse ESP's Event Staffing Fees and Event Expenses.  ESP shall be paid not later than as follows:

(a)     Fifty percent (50%) of the Production Fee within seven (7) days of the mutual execution and exchange of this Agreement;

(b)     An additional twenty-five percent (25%) of the Production Fee no later than September 15, 2015;

(c)     The final twenty-five percent (25%) of the Production Fee no later than ten (10) days after the final day scheduled for the close of public attendance of the Event; and

(d)     Payment or Reimbursement for all Event Staffing Fees and Event Expenses (as defined below) paid, advanced, or incurred by ESP (which ESP shall have no obligation to pay, advance or incur) shall also be due as provided in Sections 5 and 6 below and in no event later than the date that final payment of the Production Fee is due, as set forth herein above.

5.      Event Staffing Fees.  "Event Staffing Fees" shall mean all wages, costs, expenses, charges, debts, obligations or liabilities reasonably incurred, to be incurred or payable in connection with, or otherwise attributable to, certain staffing needs for the Event.  ESP will evaluate the on-going need for individual staff members on a daily basis during the Event. ESP will consult with Promoter regarding staffing needs and on-going budget on a daily basisESP will provide written documentation of all requested Event Staffing Fees. The anticipated fee rates are set forth below.

    Credentials Manager - Up to $3,000
    Info Manager - Up to $5,000
    Info Staff - $21/hour up to $9,000
    Parking Staff - $25/hour up to $26,000
    Parking Supervisor - $35/hour up to $9,000
    Parking Manager - $45/hour up to $4,000
    Shower Sales Manager - $3,000
    Shower Sales Staff - $21/hour up to $5,000
    Signage Manager - Up to $5,000
    Signage Staff - Up to $7,000
    Striping Manager - Up to $7,000
    Striping Staff - Up to $14,000
    Operations Staff - Up to $30,000
    Operations Manager - Up to $7,000
    Event Admin - Up to $20,000
    Tolls Management - Up to $8,000
    Tolls Staff - $25/hour up to $23,000
    Box Office Manager - Up to $7,500
    Box Office Staff - $25/hour up to $15,000

    Estimated total Event Staffing Fees:  $207,500

Promoter hereby agrees to pay to ESP:

    (a)    Twenty-five percent (25%) of the estimated total Event Staffing Fees (the "Staffing Fee Advance") within seven (7) days of the mutual execution and exchange of this Agreement; and

    (b)    Fifty Percent (50%) of the estimated total Event Staffing Fees (the "Staffing Fee Advance") on September 15th, 2015; and

    (c)    Promptly for the remaining balance of the Event Staffing Fees. ESP shall invoice Promoter for all Event Staffing Fees in excess of the Staffing Fee Advance, up to the total set forth above. ESP will invoice Promoter for the balance of staffing fees incurred. Promoter shall be solely responsible for the prompt payment or prompt reimbursement of all Event Staffing Fees.

    6.    Event Expenses. "Event Expenses" shall mean, all costs, expenses, charges, debts, obligations or liabilities reasonably incurred, to be incurred or payable in connection with, or otherwise attributable to, the ESP Services.  Upon Promoter's reasonable and timely request, ESP shall assist in the preparation of a budget for all anticipated Event Expenses for Promoter's review and advance approval (the "Budget"). The amounts provided by ESP for the Budget are good faith estimates by ESP but are not intended as a representation or limitation as to the amount of expenditures that will be incurred for the production and presentation of the Event.  ESP and

    (a)    Promoter shall be solely responsible for the prompt payment or prompt reimbursement of all Event Expenses. Specifically, for the avoidance of doubt

and without limiting the foregoing in this Section 6 of this Agreement, Promoter shall promptly directly pay or reimburse ESP (at ESP's election in each instance) or shall promptly cause the direct payment or reimbursement to ESP (at ESP's election in each instance) the following Event Expenses:

    i.    <u>Travel Expenses</u>: all of ESP's reasonable travel expenses to the Event site and continuing throughout ESP's presence at the Event, as necessary. ESP personnel shall be entitled to stipulate the airline on which Promoter purchases ESP's flights, and ESP personnel shall have the right to elect to secure flights, in coach class, themselves and to subsequently and promptly be reimbursed in full by Promoter. ESP personnel shall receive the current federal tax food and beverage per diem on travel days;

    ii.    <u>Lodging Expenses</u>: all of lodging ESP's reasonable lodging expenses traveling to the Event site and continuing throughout ESP's presence at the Event, as necessary. Lodging must be approved by ESP and Promoter. In the event any ESP personnel provides his/her own lodging arrangements, ESP shall be paid a reasonable buy-out equivalent for such person's lodging which shall be no less than seventy-five percent (75%) of the average lodging cost incurred by Promoter or the Event for ESP's other personnel or (if no other ESP personnel) the cost of the lodging provided to the Promoter's or the Event's other personnel and vendors or the reasonable equivalent thereof; and

    iii.    <u>Meals and Per Diems</u>: Promoter shall provide three (3) meals per person to ESP personnel on the dates that they are on site at the Event, including without limitation, on pre-Event site visit dates and work dates. In the event that neither Promoter nor the Event is providing meals, Promoter shall either (A) pay ESP a cash buy-out for each of the ESP personnel for the number of meals and days set forth in the preceding sentence at any government-mandated per diem rate (e.g., where a state or city has an applicable statutory minimum food and beverage per diem) or (B) all food and beverage expenses incurred by ESP personnel shall be fully and promptly reimbursed to such personnel by Promoter upon ESP's presentation of receipts for such expenses.

(b)    Promoter shall be solely responsible, and shall hold ESP harmless from and free of any and all sales, use, amusement, admission, or other tax, charge or assessment imposed by local, state, provincial, federal government or other taxing authority, imposed or to be levied in connection with or resulting directly or indirectly from the presentation of the Event and/or performance of services rendered by ESP hereunder (excluding ESP's income taxes).

(c)    ESP shall not incur any Event Expenses unless (i) approved by Promoter or (ii) the amount of such Event Expenses to be incurred is consistent with the

approved Budget. When approval is sought by ESP pursuant to this paragraph, Promoter shall notify ESP of its approval or disapproval in a timely manner consistent with the production schedule and the Event date. If Promoter fails to respond to ESP's request for approval within one (1) business day, then ESP's request shall be deemed approved unless the request relates to an Event Expense in excess of $25,000. If the Event is underway, Promoter shall provide ESP with such approval or disapproval immediately upon ESP's request therefor, and failing to do so shall hold ESP harmless against any liability in connection with ESP's incurring such Event Expense in ESP's reasonable good faith judgment.

(d)     Petty Cash and Expenses Debit or Credit Card. Upon ESP's arrival at the Event, Promoter shall provide ESP with a credit card or bank debit card tied to an account with sufficient funds for ESP to pay expenses in connection with the Event, and Promoter shall replenish the funds in such account promptly as reasonably requested by ESP. In addition, Promoter shall upon ESP's arrival at the event provide ESP with a petty cash bank reasonably sufficient to pay Event expenses that must be or may more efficiently be paid in cash, provided that ESP shall not be required to accept increments of petty cash that ESP deems unsafe. Promoter shall hold ESP harmless against any losses of or stolen petty cash by ESP, except in any case of ESP personnel's gross negligence or employee crime. Promoter will comply with any and all ESP's reasonable requests for security measures in connection with petty cash.

7.     Sponsorship Revenue. In the event ESP secures any sponsorships for the Event, which include, but are not limited to, financial support, trade-out arrangements, or in-kind goods (collectively, the "Sponsorship Revenue"), ESP will be entitled to ten percent (10%) of the Sponsorship Revenue as a service fee (the "Sponsorship Fee"). In the case of trade-out arrangements or in-kind goods, Sponsorship Fee shall be calculated using the estimated value of the goods provided by the sponsor. For Sponsorship Revenue received directly by ESP, ESP will retain the Sponsorship Fee and remit the balance to Promoter. If a sponsor pays Promoter directly, Promoter agrees to pay any Sponsorship Fee due to ESP no later than seven (7) days after the final day scheduled for the close of public attendance of the Event.

8.     Event Revenue. ESP will retain twenty percent (20%) of the Net Event Revenue. "Net Event Revenue" is defined as all ticket sales, concessions revenue (including, but not limited to, food, beverage, and merchandise), service charge revenue, and sponsorship net of commission paid to sellers.

9.     Insurance. Promoter shall maintain and pay all premium costs and deductibles, if any, throughout the duration of the Event Operation Period for the following insurance coverage in amounts not less than specified. The "Event Operation Period" shall mean that period of time commencing prior to the date of the performance of the Event on which personal property or fixtures including without limitation equipment is initially brought into the Facility and continuing until complete and final removal of all such personal property and fixtures including without limitation said equipment following completion of the Event.

(a)     Worker's compensation in compliance with statutory requirements;

(b)     Comprehensive general liability, including personal injury and contractual
        liability with a combined single limit in an amount not less than $1,000,000 per
        occurrence, and $2,000,000 aggregate for bodily injury and property damage;
        and

(c)     Inclement weather coverage in an amount reasonably sufficient to cover full
        payment to ESP as set forth hereunder and full payment of Promoter's other
        obligations in connection with the Event in the event the Event is cancelled
        due to inclement weather.

        Policies above shall be endorsed to name ESP, and each of its officers, directors, agents
and employees, as "Additional Insureds," with respect to any and all claims arising from or in
connection with the Event. Coverage for the Additional Insureds will apply on a primary basis
irrespective of any other insurance, whether collectible or not, to the extent of Promoter's
liability. Should any additional premium be charged for the foregoing coverage or waivers,
Promoter will be solely responsible for the costs and payment of such additional premium due.
All insurance furnished by Promoter hereunder will be in full force and effect at all times
during the Event Operation Period.

        Promoter and ESP will each use reasonable efforts to ensure that its contractors
maintain commercial general liability insurance with limits of at least $1,000,000.

        Promoter will deliver to ESP satisfactory evidence of the previously described
insurance coverage on a certificate form approved by ESP or, if required, copies of the
policies. All required insurance will be placed with carriers licensed to do business in the
applicable state, have a rating in the most current edition of A.M. Best's Property Casualty Key
Rating Guide that is acceptable and approved in each applicable state and will provide thirty
(30) days written notice of cancellation or non-renewal which notice shall be forwarded to ESP.

10.     INDEMNIFICATION AND HOLD HARMLESS.

        (a)     PROMOTER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS
                ESP AND ANY SUBSIDIARIES, CONTRACTORS, AFFILIATES, AND
                EACH OF THEIR RESPECTIVE AGENTS, OFFICERS, DIRECTORS AND
                EMPLOYEES (COLLECTIVELY REFERRED TO AS "ESP PARTIES"),
                FROM AND AGAINST ANY AND ALL ASSESSMENTS, CLAIMS,
                DEMANDS, SUITS, CAUSES OF ACTION, LIABILITY, JUDGMENTS,
                DAMAGES, COSTS AND EXPENSES (INCLUDING REASONABLE
                ATTORNEYS FEES AND COURT COSTS) ASSERTED AGAINST ANY
                OF THE ESP PARTIES AND ARISING OUT OF OR RESULTING FROM
                (I) THE ACTS OR OMISSIONS OF PROMOTER, ITS EMPLOYEES,
                AGENTS OR SUBCONTRACTORS OR (II) THE PRESENTATION OR
                PERFORMANCE OF THE EVENT, INCLUDING, BUT NOT LIMITED TO,
                ANY CLAIMS FOR BODILY INJURY, DEATH OR PROPERTY DAMAGE

OR LOSS. THE PARTIES AGREE, HOWEVER, THAT PROMOTER SHALL NOT BE OBLIGATED TO DEFEND OR INDEMNIFY THE ESP PARTIES FOR ANY CLAIMS, DEMANDS, SUITS, LIABILITIES, EXPENSES, ETC. THAT ARISE OUT OF THE NEGLIGENCE OR WILLFUL MISCONDUCT OF AN ESP PARTY.

(b)   ESP AGREES TO INDEMNIFY, DEFEND AND HOLD PROMOTER HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, SUITS, CAUSES OF ACTION, LIABILITY, JUDGMENTS, DAMAGES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS) ASSERTED AGAINST PROMOTER AND ARISING OUT OF OR RESULTING FROM ANY ACT OR OMISSION OF ESP IN CONNECTION WITH ESP'S PERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS FOR BODILY INJURY, DEATH OR PROPERTY DAMAGE OR LOSS. THE PARTIES AGREE, HOWEVER, THAT ESP SHALL NOT BE OBLIGATED TO DEFEND OR INDEMNIFY PROMOTER FOR ANY CLAIMS, DEMANDS, SUITS, LIABILITIES, EXPENSES, ETC. THAT ARISE OUT OF THE NEGLIGENCE OR WILLFUL MISCONDUCT OF PROMOTER OR ITS EMPLOYEES, AGENTS OR CONTRACTORS.

11.   Termination: It is the expectation of the Promoter that the Event will be successful and attain a considerable number of advance reservations. Promoter will make every effort to promote the Event and encourage other entities associated with the World Meeting of Families to do the same. However, circumstances beyond the Promoter and ESP's control may inhibit the success of the Event Therefore, Promoter reserves the right to terminate thisEvent and this Agreement at any point up to and through September 14th, 2015. Promoter and ESP will meet on September 14th to assess the Event to verify that Event planning and advance sales are meeting expectations. Promoter will consult with ESP prior to any decision to terminate however any decision to terminate this Event and this Agreement will be at the sole discretion of Promoter. In the event of termination up to and through September 14th,, ESP will be entitled to payment of a portion of the Production Fee as specified in Section 4 (a) and reimbursement of a portion of any Staffing Fee as specified in Section 5 (a).

12.   Defaults and Remedies.

(a)   Generally. If either party hereto should fail, refuse or neglect to fulfill or perform any obligation contained herein or otherwise violate or breach any requirement or restriction imposed upon it pursuant to the provisions of this Agreement ("Defaulting Party") and such breach or failure is not cured within ten (10) days following written notice to the Defaulting Party, then the other party ("Non-defaulting Party") hereto shall have the right to take any combination of the remedial steps listed below:

(i) file such lawsuits against the defaulting party as may be

necessary to pursue the non-defaulting party's rights and remedies provided by law or equity against the defaulting party;

        (ii) enforce the obligations of the defaulting party under this Agreement by an action for specific performance; and

        (iii) terminate this Agreement and all of the Non-defaulting Party's duties, liabilities, responsibilities and obligations hereunder.

(b)    <u>Delay</u>. No failure on the part of any party hereto to exercise, and no delay in exercising any right or remedy so provided for herein, shall operate as a waiver thereof, nor shall any single or partial exercise by either party of any right or remedy so provided hereunder preclude any other or further exercise of any other right or remedy provided hereunder.

(c)    <u>Attorneys' Fees</u>. In the event that either party to this Agreement should commence legal action to enforce the provisions of this Agreement, then the prevailing party in such action shall be entitled to recover reasonable attorneys' fees and costs from the non-prevailing party in such action.

13.    <u>Notices</u>. All notices given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally with receipt acknowledged or sent by registered or certified mail or equivalent, if available, return receipt requested, or by facsimile (which shall be confirmed by a writing sent by registered or certified mail or equivalent on the same day that such facsimile is sent) or e-mail (which shall be confirmed with a read receipt).

14.    <u>Applicable Law</u>. This Agreement shall be construed under and in accordance with laws of the Commonwealth of Pennsylvania.

15.    <u>Other Instruments and Further Assurances</u>. The parties hereto covenant and agree that they will execute such other and further instruments and documents and take such actions as are or may become necessary or mutually desirable in effectuating and carrying out the provisions of this Agreement.

16.    <u>Headings</u>. The headings used in this Agreement are used for administrative purposes only and do not constitute substantive matter to be considered in construing the terms of this Agreement.

17.    <u>Assignment; Successors & Assigns</u>. Neither party may transfer, assign or convey any of its rights or obligations hereunder without the prior consent of the other party, which shall not be unreasonably withheld, delayed or conditioned. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

18.    <u>Invalidity</u>. If any term, provision, covenant or condition of the Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement will remain in full force and effect and will in no way be affected, impaired or invalidated.

19.     Counterparts. This Agreement may be executed by facsimile, PDF (and other similar electronic format) and in any number of counterparts, each of which shall for all purposes be deemed to be an original.

20.     Entire Agreement and Modification. The Agreement and any attached Exhibits contain the entire agreement between the parties relating to the subject matter hereof and all prior agreements relative hereto which are not contained herein are terminated. This Agreement may be amended, revised, or terminated only by a written instrument executed by the party against which enforcement of the amendment, revision, or termination is asserted.

21.     Relationship of the Parties. The parties are acting herein as independent contractors. Except as specifically authorized herein, nothing herein contained will create or be construed as creating a partnership, joint venture, agency or employment relationship between the parties and no party will have the authority to bind the other in any respect without express written authority. Each party shall be solely responsible for all wages, income taxes, worker's compensation requirements and any other requirements for all personnel it supplies pursuant to this Agreement.

22.     Confidentiality and Proprietary Information. Each of Promoter and ESP (the "Receiving Party," as the case may be) acknowledges that it may be exposed to confidential or proprietary information of the other (the "Disclosing Party," as the case may be) in the course of the Receiving Party's performance of its obligations under this Agreement. The Receiving Party shall not use any such confidential or proprietary information for any purpose other than as reasonably required to perform in accordance with this Agreement and shall maintain the secrecy and confidentiality of all such confidential or proprietary information with the same amount of care that it uses to protect its own confidential or proprietary information, but in no event less than a reasonable amount of care; provided, however, that confidential and proprietary information, for purposes of this provision, shall not include any information that is or becomes publicly known through no fault of the Receiving Party, information that is disclosed to the Receiving Party by a third-party not having an obligation to keep the information confidential, or information independently developed by or on behalf of the Receiving Party. Both parties acknowledge that a Receiving Party under this provision may disclose confidential information as necessary to comply with any subpoena or similar order of a court or governmental agency or authority, provided that the Receiving Party gives the Disclosing Party as much notice as possible under the circumstances, so that the Disclosing Party may have an opportunity to contest the disclosure before the relevant tribunal or body.

23.     Force Majeure. The failure of any party hereto to comply with the terms and conditions hereof because of a "Force Majeure Occurrence" shall not be deemed a breach of this Agreement. "Force Majeure Occurrence" shall be defined to include, without limitation, Act of God, strike, union labor disputes or interruptions, war, fire, earthquake, acts of public enemies, acts of terrorism, epidemic, action of federal, state or local governmental authorities (except in cases in which the action is the result of Promoter's negligence) or an event or reason similarly beyond the reasonable control of a party. In the event of a cancellation of the Event reasonably necessary due to a Force Majeure Occurrence, each party shall be relieved of its obligations hereunder with respect to the performance so prevented, except that Promoter shall (a) negotiate in good faith with ESP a partial payment of the Production Fee based on the services rendered and to be rendered and (b) reimburse ESP

for any out-of-pocket Event Expenses incurred by ESP in connection with its obligations hereunder.

      24.    <u>Inclement Weather</u>. Notwithstanding anything contained herein, inclement weather shall not be deemed to be a Force Majeure Occurrence unless federal, state or local officials cancel or shorten the Event due to inclement weather. Promoter shall remain liable to ESP for compensation set forth in this Agreement, including, without limitation, reimbursement for reasonable expenses incurred, if the Event is prevented by such weather conditions but not cancelled or shortened by federal, state or local officials. ESP shall have the right to determine in good faith whether any such weather conditions shall render any of ESP's obligations hereunder impossible, hazardous or unsafe, and in the event of such determination, ESP shall be relieved of such obligations, and ESP shall nevertheless be entitled to full compensation hereunder.

      25.    <u>No Waiver of Rights</u>. If either party fails to enforce any of the provisions of this Agreement or any rights or fails to exercise any election provided in the Agreement, it will not be considered to be a waiver of those provisions, rights or elections or in any way affect the validity of this Agreement. The failure of either party to exercise any of these provisions, rights or elections will not preclude or prejudice such party from later enforcing or exercising the same or any other provision, right or election which it may have under this Agreement.

      26.    <u>Compliance with Laws</u>. Each party shall be responsible for compliance with all federal, state and local laws and regulations applicable to its activities in connection with this Agreement or the Event, including, without limitation, obtaining any licenses, permits or other approvals applicable to the Event or the activities contemplated herein.

      27.    <u>Survival of Commitments</u>. All representations, warranties, provisions regarding insurance and agreements to indemnify shall survive the termination of the Agreement.

      IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date set forth above.

ESP:                                                PROMOTER:

_____      _____
An authorized signatory              An authorized signatory
Title:_____      Title:_____

JS 44 (Rev. 12/12)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Endless Summer Productions, LLC | Scott Mirkin and Event by Scott Mirkin, Inc., d/b/a ESM Productions, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Newark, Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmelo T. Torraca, Esquire - I.D. No.: 77553
Cooper Levenson, P.A., 1125 Atlantic Avenue, Atlantic City, NJ 08401
609-344-3161

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government Plaintiff
- ❏ 3   Federal Question *(U.S. Government Not a Party)*
- ❏ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane   ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product    Product Liability | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument |    Liability   ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel &    Pharmaceutical | | ❏ 820 Copyrights | ❏ 450 Commerce |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ❏ 830 Patent | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers'    Product Liability | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted |    Liability   ❏ 368 Asbestos Personal | | |    Corrupt Organizations |
|    Student Loans | ❏ 340 Marine    Injury Product | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
|    (Excludes Veterans) | ❏ 345 Marine Product    Liability | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** |    Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ❏ 350 Motor Vehicle   ❏ 370 Other Fraud | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) |    Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle   ❏ 371 Truth in Lending |    Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ☒ 190 Other Contract |    Product Liability   ❏ 380 Other Personal | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal    Property Damage | ❏ 751 Family and Medical | | ❏ 893 Environmental Matters |
| ❏ 196 Franchise |    Injury   ❏ 385 Property Damage |    Leave Act | | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury -    Product Liability | ❏ 790 Other Labor Litigation | |    Act |
| |    Medical Malpractice | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** |    Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights   **Habeas Corpus:** | |    or Defendant) |    Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting   ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party |    Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment   ❏ 510 Motions to Vacate | |    26 USC 7609 | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/    Sentence | | |    State Statutes |
| ❏ 245 Tort Product Liability |    Accommodations   ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities -   ❏ 535 Death Penalty | **IMMIGRATION** | | |
| |    Employment   **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities -   ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| |    Other   ❏ 550 Civil Rights |    Actions | | |
| | ❏ 448 Education   ❏ 555 Prison Condition | | | |
| | ❏ 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ❏ 2   Removed from State Court
- ❏ 3   Remanded from Appellate Court
- ❏ 4   Reinstated or Reopened
- ❏ 5   Transferred from Another District *(specify)*
- ❏ 6   Multidistrict Litigation

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
Breach of Contract;Fraud in the Inducement

### VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
11-5-2015

SIGNATURE OF ATTORNEY OF RECORD
Carmelo T. Torraca - 77553

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE



# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 34 Rankin Road, Newark, Delaware 19711

Address of Defendant: 2 Penn Center, 1500 J.F.K. Blvd., Philadelphia, PA 19102        **6097**

Place of Accident, Incident or Transaction: _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes□   No☒

Does this case involve multidistrict litigation possibilities?        Yes□   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
        Yes□   No□

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
        Yes□   No□

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
        Yes□   No□

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
        Yes□   No□

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. □ Indemnity Contract, Marine Contract, and All Other Contracts
2. □ FELA
3. □ Jones Act-Personal Injury
4. □ Antitrust
5. □ Patent
6. □ Labor-Management Relations
7. □ Civil Rights
8. □ Habeas Corpus
9. □ Securities Act(s) Cases
10. □ Social Security Review Cases
11. □ All other Federal Question Cases
     (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. □ Airplane Personal Injury
3. □ Assault, Defamation
4. □ Marine Personal Injury
5. □ Motor Vehicle Personal Injury
6. □ Other Personal Injury (Please specify)
7. □ Products Liability
8. □ Products Liability — Asbestos
9. □ All other Diversity Cases
     (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

□ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

□ Relief other than monetary damages is sought.

DATE: _____        _____        _____
                                        Attorney-at-Law                        Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11-5-2015        Carmen Torraca        72553
                                Attorney-at-Law                        Attorney I.D.#

CIV. 609 (5/2012)

NOV - 6 2015

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Endless Summer Productions, : | | CIVIL ACTION |
| LLC : | | |
| v. : | | |
| Scott Mirkin and Event by : | | NO. |
| Scott Mirkin Inc. d/b/a : | | |
| ESM Productions, Inc : | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                         ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                   ( X )

| | | |
|---|---|---|
| *11-5-2015* | Carmelo T. Torraca | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| | | |
| 609-344-3161 | 609-572-7521 | ctorraca@cooperlevenson.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02